All right, thank you. You can be seated. All right, let's hear from the appellant. Good morning, Your Honors. May it please the Court? The issue presented here is whether a prior conviction for resisting arrest under Maryland law has as an element the use of violent force against another person as necessary to qualify it as a crime of violence under Section 2L1.2 of the Guidelines. We urge the Court to find that it does not have an element. Last year, the Maryland Court of Appeals stated in Nicholas, the force that is required to find a defendant guilty of resisting arrest is the same as the offensive physical contact that is required to find a defendant guilty of the battery variety of second-degree assault. And as the Supreme Court held in Johnson, offensive physical contact does not constitute violent force. The government asked this Court to set aside the statement in Nicholas and to look at the underlying conduct of resisting arrest convictions in Maryland and find that violent force is, in fact, necessary. But doing so would run afoul of Johnson, in which the Court said that federal courts are bound by the state Supreme Court's interpretation of state law, including its determination of the elements. It would also conflict with the categorical approach's focus on the elements and not the underlying conduct of a prior conviction. So are you saying that there's an absolute prohibition in looking at any conduct as an aid to interpreting an element of a state offense? No, I'm not saying that it's an absolute bar. I'm saying that when there's a clear pronouncement by the highest court of the state that you do not need to look any further to illuminate the elements. If it was unclear, that would be a different situation. Would you agree that in looking at the elements, we don't need to look at whether force is required, but whether there is a threatened use of force as an element? Threatened use of violent force. The key word is violent. Well, if you look at Johnson, violent force means force that will cause pain or personal injury. Nothing more. And so it really just becomes circular. And my question is, is resisting arrest, physical arrest by an officer, more threatening to personal injury than burglary, where the burglar breaks and enters with stealth, hoping nobody's at home, but may encounter somebody? I certainly do not think it's more threatening of injury than burglary. Which one do you think is more susceptible, a greater threat to the use of force and cause of pain? Well, I think they're so separate that it's hard to compare. The Supreme Court does it all the time, and they find burglary to be a fairly low threshold. Well, burglary actually does not qualify as a predicate offense under the force clause. It qualifies as a predicate offense under the visual clause. I understand, but I'm asking you a hypothetical question because I do believe there's a direct analogy. You can answer the question as to whether you believe the threat of violence or personal injury or pain is greater in resisting arrest than in burglary. And you're looking at the usual resisting arrest case and the usual burglary case? I think the threat is greater in burglary. I think the violent confrontation of somebody entering your home... Do you agree resisting arrest is resisting a physical apprehension? Yes. It is. It just need not be violent. Well, violent is the threatening of pain or personal injury to others. It's a possibility. How about escape from custody? Is that a greater risk to violence than resisting arrest? I believe it is. And under the residual clause, I do think that escape is a different offense. And if we were looking at this under the residual clause, I think that... Isn't the analysis to determine what the risk of violence is as defined in Johnson? And Johnson says violence means the threat to cause pain or personal injury to another. The question here is not though if there's a risk of physical injury. The question is, is there an element of violent force? No, no. It doesn't say that. It says an element of threatened violent force. Yes. It's a lot different. The use or threat of violent force. And I do not believe that resisting arrest has an element of either threatened or... What do you think the word resist means when there's a physical arrest being made? A physical putting in custody and somebody resists that. Can I give an example? I just want to know, what do you think, does a resist have to be physical? It does not have to be physical. But actually under Maryland law, it has to be forceful. Now forceful could be, in one example that was cited in the brief, it could be pulling your arms into your chest to prevent the officer from handcuffing you. In Parnell, which the Court of Appeals decided in 2003, the resistance consisted of a man who was on the ground who had to be pulled out from under a truck that he was hiding by officers trying to arrest him. And the resistance consisted of him pushing up off the ground while the officers were trying to arrest him. And they said the resistance consisted of him pushing up, which caused the officers to have to push him back down to get his arms behind his back. But you're trying, in sort of making sense of the Supreme Court decisions here, there are two sets of cases. One is the Taylor and Descamps case. And that addresses the question of when should a categorical approach be applied, correct? Yeah. And then the other set of cases is Duenas-Alvarez and James. And that addresses a very different set of questions, a very different sort of question. And that is, how would the categorical approach be applied? So you've got one set of cases addressing when it applies. Then you've got another pair of cases addressing how you would apply the categorical approach. And, you know, doesn't Duenas-Alvarez make very clear that there has to be a realistic probability that the state would apply a statute outside the generic or the common understanding of a crime? And then James goes farther and it says we have to look at the ordinary case. You can't just take an outlier or a hypothetical or something on the periphery. It says you've got to go to the center of gravity in this whole thing in looking how it's applied. And you have to look at the ordinary case. And James, it doesn't just make the point one time. It makes the point three different times. It said James was arguing in that case that you can't use the categorical approach as an ACCA predicate unless all cases present such a risk. And then the court rejects that and says no, you don't have to prove that all cases present the risk. And then it goes again to say, it goes and says, okay, we're applying Duenas-Alvarez. There has to be a realistic probability here that the state courts would apply it in this fashion. And then it starts talking about look at the ordinary case. Look at the center of gravity under the categorical approach. Don't just, and it specifically, you cannot, it says, James, it says one can always hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury. But it says you can't do that. You've got to go to the center of gravity of the offense. What does it commonly mean? What does it generally mean? How is it generally applied? It's a practical inquiry. And why wouldn't that be the governing standard here? We all agree the categorical approach is the one to apply, but it's all in Duenas-Alvarez and James. How do you apply it? How do you apply it? And you've got, the Supreme Court is saying to us, you've got to be practical. You've got to go to the center of gravity. You've got to look at the ordinary case. And they don't just say it once. They say it three different times. So why wouldn't that approach apply here? And why isn't the ordinary case one where violent force is directed generally, though not always, at the arresting officer? In Duenas-Alvarez, the court was looking at California attempted theft. And they were comparing it to the generic theft offense. And in that case, they were looking at the generic because they were looking at the enumerated, which they had to find the generic definition. The defendant in that case argued that the California version of the statute that he violated was much broader than the generic version because it allowed a person to be convicted for the natural and probable consequences of his actions, which the defendant argued was broader than the generic crime. The court responded that if you were trying to make the argument. So is your view that Duenas-Alvarez has no application? I think it has application in the context of the residual clause or enumerated offenses, as was the case in James and Duenas-Alvarez, where you need to look for a generic definition. But when you're looking under the force clause, you're not looking for a generic definition. You're looking for what is actually the case. Yes, but James indicates that the Duenas-Alvarez ordinary case approach even applies to unlisted crimes. I'm not sure that they draw any distinction between residual clauses and force clauses. It says it applies to an unlisted crime. And you can find out with the force clause or with the residual clause. Maybe the term generic is a term of art, but you can certainly find out what the general understanding of resisting arrest is. You can certainly find out what the common law roots of it are. You can certainly find out how the term and what the crime means in most states. There's a common core meaning. Is there any indication that James would want us to do otherwise and split an approach to the residual clause and the force clause? Well, I think that decision lies with the Sentencing Commission, which drafted 2L1.2 and specifically pointed out enumerated offenses that they believe should always qualify and then said otherwise, or a crime that has as an element the use of force. But why is it the ordinary case? And in case after case after case, courts are looking at conduct, not just our court, which has, in a number of cases, looked at conduct in an attempt to find the elements and an attempt to locate how the crime applies in the ordinary case, but the Supreme Court as well is looking at conduct to interpret the elements and to see how it's actually applied. You know, actually, not some big theoretical discussion. Now, why would we vary that approach here? There's no indication that we should. The conduct that is looked at is, in the context of the residual clause, you're looking at an offense that has conduct that involves a serious potential risk of physical injury to another. The word conduct is in the definition of the residual clause. Enumerated offenses, Taylor said and Shepard said, that in order to have uniformity, you need to find the generic offense to see if it is the type of offense that Congress meant to define or that the Sentencing Commission meant to define. Counsel, may I ask you a question? Yes. Oh, there you are. Yes, Judge Gregory. Police officers are one of the few people in our society who can actually put their hands on you. As judges, we can't do that. We can't arrest anyone. That's a special police power. And normally, police officers are armed with weapons, firearms, sometimes batons, mace, badges of authority. In that sense, to resist that force of authority, that's the element in the threat of violence. Back to Judge Wilkinson's question, I think, is tell me why it is not the core of the crime, a situation where a person is resisting that force, someone who's armed with all the badge of authority and those implements of authority, that is not a threat that there will be violence. A threat of violence means that someone may have force against them that could cause injury. Why not? That's the question. The first answer is that I don't believe that there is a threat of inherent violence. Why not? Well, can I jump to my second? Even if there was a threat of violence, that is not the inquiry. The inquiry is whether there's an element of violent force. To go back to the first... You're misstating the regulation. It says, has as an element the use, attempted use, or threatened use. Oh, the threat. Yeah, I thought we conceded that the element is a threat. It can be the threat of violence. Okay, to go back. In Carthorne, this court looked at assault and battery on a police officer. Assault and battery, which is certainly, you would think, more affirmatively aggressive and violent than resisting arrest. And this court found that it was not a crime of violence under the force clause of the Career Center Enhancement because police officers are trained individuals. They were described as not being powder kegs so that they were able to diffuse the situation. It didn't automatically... But Carthorne looked at a number of cases, did it not, in terms of the application? I mean, I think Carthorne did it exactly right. They looked at several cases and said, here's a case where there was considerably less than violent force involved. Actually, Carthorne did it right, but not because it looked at underlying conduct, because it cited a Virginia Supreme Court case which said battery is completed by any intentional touching. And it took that element at its base. Any intentional touching was enough. And because of that, it was not a crime of violence. They didn't actually do a survey of all of Virginia assault and battery on a police officer. No, but there were other cases that were looked at which showed that it was applied outside the generic understanding to nonviolent conduct. Certainly, but that was not necessary to the whole thing. Well, you can say it wasn't necessary. It certainly added a great deal of persuasiveness to the analysis to actually look at the conduct, as Carthorne did, properly and rightly, and to show situations where there were a number of instances where the ABP was applied to perfectly innocuous situations. But I don't see that we have that here. Well, in Virginia, there happened to be published cases that were readily accessible. Yes, and it's significant. That's right, and that's why Carthorne is right, because in Virginia, there were a number of published cases that indicated it was applied to nonviolent conduct. But here, you have a different situation. You have resisting arrest, which is a crime with long common law roots, going back to the 1850s. The violent origins of the crime are made clear even in the English cases in the 1850s. Those common law roots were carried forward in American law and American common law, which were eventually embodied by statute, and the model penal code reflects this understanding of this particular offense, resisting arrest, as being the whole purpose of it, being simply to protect police officers from serious personal injury and harm. That's the definition of it. It's not supposed to metastasize to all kinds of nonviolent things. It was put in for a particular purpose to distinguish it from lesser things like flight and obstruction and everything. It has one discrete object. Well, the common law roots of resisting arrest are actually not in the context of assault and battery on a police officer. The origins were that it was in the body of offenses that were hindering, obstructing a law enforcement officer. It could have been something completely inactive. It could have been just telling the officer that the person ran this way when they ran that way. That would be hindering a law enforcement officer. It's in the same family of offenses. And in Nicholas, this court said... I mean, sorry, the Maryland Court of Appeals said that mere flight was not enough. Some force was necessary. The same court said only minimal force is necessary. It was distinguished from the hindering cases only because mere flight was not enough. You refuse to recognize that potential injury and potential pain inherent in an element satisfies the category. For instance, I gather under your proposition fleeing an officer in an attempt to avoid arrest in an automobile is not a violent crime. That would be a violent crime. Why? Because that has a greater... Fleeing in a vehicle based on sight... Fleeing an officer... Fleeing an officer in a vehicle. Mm-hmm. Under sights, it would because... Of course it would, because they noticed even though that statute also had another crime which is resisting with physical force, the Supreme Court says just fleeing in a vehicle from an officer can lead to violence. Like burglary can lead to violence. Like escape can lead to violence. And I suggest to you resisting a physical arrest as Judge Gregory pointed out, an officer who's armed and trying... will take you in by force. Resisting that is potential, leads potentially to personal injury and pain. The offense here is just resisting arrest. I agree with you that resisting arrest by fleeing in a vehicle... You agreed that arrest is a physical concept. It is. Taking somebody and when you resist the physical arrest of a person, your conduct has to be addressing the physical effort of the officer. The physical force... The force is not necessary. It's the threat of force. Even the threat of force. Violence. It's a threat of actually personal injury and harm. But it's not necessary to the conviction. The point is that many, in fact, every... Even if you look at every single case under Maryland law and found violent conduct in every single one, it still does not matter. The key is the elements, not the facts. We need to know what was minimally sufficient to support a conviction. So even if there was one case that never made it up to a published decision... But, see, you keep imposing the standard that force has to be an element. And I'm suggesting to you that resisting inherently threatens force. It doesn't necessarily implicate force. And all the definitions we have, this is a threatening force, even in Johnson where they talked about violent force. It was the threat, the capability of causing pain or personal injury. I think Sykes... The reason Sykes actually, which was the fleeing in a vehicle from law enforcement, Sykes specifically said that there was not an element of force even though there was a significant risk of injury. So they're not the same... That doesn't help you at all. Because you keep arguing that the element has to be the exercise of force. And I'm suggesting to you the element by... The element has to be the threat of force, just as extortion, burglary, and the other ones that are in the list. Does second-degree assault under Maryland law involve a threat of physical force? No, according to this court in Royal, no. It does not qualify as a violent felony. I didn't ask whether it qualifies as a violent felony. I asked whether it involves a threat of violent force. No, it includes only any physical contact, any unwanted touching, no matter how slight. Same as in Johnson. Would not an assault on a police officer involve a threat of violent force if Judge Niemeyer is right about resisting arrest? I don't see the difference between resisting arrest of a law enforcement officer under Maryland law and assault on a law enforcement officer under Maryland law. If what turns... What answers the question is whether there's a threat of force. I don't see how there cannot be a threat of force against a law enforcement officer when you assault a law enforcement officer any differently from the threat of force, if Judge Niemeyer is right, when it comes to resisting the arrest affected by a law enforcement officer. But as your earlier answer suggested, we've held clearly now several times that second-degree assault under Maryland law is not categorically a crime of violence or a violent felony. Is any of that incorrect? No, that's not incorrect. The fact that there may be a risk of physical force, there may be a risk of violence, is not the inquiry. The inquiry is whether it necessarily included that. And even the threat, I understand your focus is on the threat, but if I can go back to Sykes, I think Sykes very much helps us because in that case, the court specifically said that it did not have as an element the use, actual attempted or threatened use of violent force against another. It specifically said that under the force clause of the ACCA, fleeing from an officer in a vehicle did not constitute a violent felony. It only fit, it did not fit under an enumerated defense either. It only fit under the residual clause. And they went through many statistics. What did the residual clause state? I'm sorry? What did the residual clause state? The residual clause said, conduct that otherwise presents a serious risk of physical injury to another. Well, isn't that what we have here? You may, but that's not the question. Oh, I mean, isn't that what we have here in the guideline, 2L1? No, you do not have a residual clause in 2L1.2. You only have enumerated... Attempted use or threatened use of physical force against the person of another. That's the force clause, which is the same clause, the exact same language in Sykes, that was that Indiana fleeing from a... Same language in the residual clause, and by Johnson, it's a threatened use of personal injury. The violence is the threatened use of personal injury. No, they're separate. Respectfully, Your Honour, I disagree that... Well, they're structurally separate. They may use a few different words, but it's the same definitions. Not according to the Supreme Court. In Sykes, they were very clear that they had to be looked at in three different ways. And the ACCA has the force clause, which looks at the element, which is what we're looking at here, the enumerated offences and the residual clause. And they said that the fleeing of an officer in a vehicle did not satisfy the force clause because it didn't have an element of force. You can flee without exerting any force. It didn't satisfy... It was not enumerated offence. It only fit under the residual clause because of the risk of physical injury to another, because, based on statistics, it was actually a greater risk that somebody would get hurt or killed than even burglary or arson. So we contend that resisting arrest, no matter what you may feel about it in the other context, it does not fit in the force clause context because it does not have as an element violent force. But the crime is called resisting arrest. And the Maryland cases, including Williams and others, how is arrest resisted? It's resisted by force. And when you look at the recent Williams case, the one word that keeps appearing over and over is force, force, force, force. And when you look at the name of the crime, it's resisting. What kind of force are you resisting with? A gentle tap on the shoulder? I mean, you have to understand what goes on here. If somebody is using force, you have to use force. Maryland opinions make that clear. And you have to resist. And this isn't a game of act sweet, play nice. When you think of resistance by force, it's got to be violent force. And the vast, vast majority of cases bear that out. My time's up. Can I answer that briefly? Sure. The title of the offense, I mean, assault and battery on a police officer also has a title which invokes images of violence. You have to put it together. In context. And in the context here, resisting arrest, just like Johnson, the battery. Battery also is another violent-sounding offense. Johnson was concerned with little slight touchings and not having those count as crimes of violence. This is many miles away from that. We propose that it's not many miles away. It could be any intentional touching, as in several of the cases that are cited in the brief, clinging onto something, pulling your arms into yourself, or even pushing, struggling to get away from an officer, is resisting. It's clear that there has to be a use of force, and it's clear that the force is used as an act of resistance. And, you know, and just as a practical matter, as opposed to a sort of theoretical Byzantine angels on the head of a pin matter, resistance by force in this context can't mean a general pat on the back. Can I mention one more? I feel like we're going around and around. I know, but in Carthorne, let me just mention that Carthorne, the common law definition of assault was attempt with force and violence to do bodily hurt. That was part of the offense of assaulting a police officer. Again, force and violence to do bodily hurt. And that, when you actually look behind just the title and the language, any intentional touching was enough. And in our case, any intentional touching is enough. And we contend that that makes sense. Theoretically. But Dwayne, Alrez, and James said, we're not going to pursue this in an ultra-theoretical way. We're going to find out what happens in the ordinary case. Seems to me resist goes much further than unintentional, a mere touching. A defendant can touch an officer on the arm or point his finger at his chest when he's making a point and preempt an assault. But that's a far cry from resisting arrest when the officer's trying to put cuffs on him. Well, the Maryland Court of Appeals does not see them as a far cry from each other. It considers those offenses as having very much overlapping elements, which is why in most of the cases, actually, when people... We have overlapping, but I don't see how that helps the analysis because we're looking at the crime of resisting arrest. Right. And the overlapping elements does matter because the element of force is the same in both. So the offense of physical contact, even in the context that you're saying, the offense of physical contact is the same. Except the object in assault is just a mere touching. The object in resisting arrest is to avoid being taken into custody physically. I don't think the intent in the defendant's mind is relevant to the level of force that's needed, but we can disagree on that. Unless there's any further questions. Okay, thank you. Thank you. Let's hear from the government. Good morning, Your Honor. May it please the Court. In 2012, the Maryland Court of Special Appeals took great pains to narrow the boundaries of Maryland's resisting arrest offense. And one of the really key phrases in the Rich opinion, which this Court is well aware of, is that were the resisting arrest offense to be broad and allow in all sorts of contact between defendants and the police officers who are attempting to apprehend them, that could lead to grave abuse of that statute. And it was the Rich Court's firm attempt to narrow the parameters of resisting arrest in order to prevent just that kind of grave abuse. In addition, the Rich Court was attempting to bring Maryland's resisting arrest statute in line with not only the model penal code, but also the resisting arrest statutes on the books in many other states, in fact, the large majority of states. And the fair reading of the Rich Court is that in that effort to bring the Maryland resisting arrest statute in line, necessarily the resisting arrest statute as characterized by the Rich Court requires the use of violent force against a person of another, whether that be a police officer or, in the unusual circumstance, a bystander who's attempting to assist law enforcement. Well, didn't... Counsel, didn't Rich acknowledge, though, on page 1077 in discussing the Nicholas case that there were circumstances where the force required for resisting arrest would be even less than second-degree assault in Maryland, but said we are not required to comment on that here? So the Rich Court was acknowledging that resisting arrest did not require even the same degree of force as second-degree assault in Maryland, did it not, at page 1077? No, it didn't. And there are at least two reasons why that's not the appropriate reading of that language in Nicholas. The first reason is because what the court in Nicholas was referring... Excuse me, what the court in Rich was referring to there was the possibility that a crime of resisting arrest could be committed, but not the crime of second-degree assault on a peace officer. And that's separately codified under Maryland law. And in order to violate that crime of second-degree assault on a peace officer, a jury must find that, quote, a person may not... A person must have caused... intentionally caused physical injury to another if the person knows or has reason to know that the other is a law enforcement officer engaged in the performance of his official duties. And so it's quite possible that one could use a violent force or the threat of violent force against a peace officer, but not both intentionally... The mens rea is important here, Judge Keenan... and also cause physical injury. Now, I think that's a good point you're making, and I didn't appreciate that distinction. But let's turn then to Nicholas and the fact that Nicholas plainly doesn't address the assault on a police officer, but talks about the battery variety of second-degree assault and says that the force that's required to find a defendant guilty of resisting arrest is the same as the offensive physical contact that is required to find a defendant guilty of the battery variety of second-degree assault. That's the highest court of the state. So what does it matter, with all due respect, what Rich said if the highest court of Maryland, as recently as 2012, last year, said that it's the same? Well, if I may, Your Honor, I'd like to slide from your prior question into this question about Nicholas. Well, I think the core of the concern here, because Nicholas is equating the force required for resisting arrest and has stated succinctly and plainly that it's the same as the force required to find a defendant guilty of the battery variety of second-degree assault. So it's the highest court of the state, and we've got to look at the highest court of the state, don't we? Absolutely, Your Honor. And my point in terms of moving back to your prior question was just to say that it's opposing counsel's contention that second-degree assault's force requirement, the quantum of force required to commit Maryland's second-degree assault, is equal to and identical to the force requirement under resisting arrest, which, of course, I disagree with. But either way, whether this court were to adopt the defense counsel's position or my position, surely the force cannot be any less than the force required to commit Maryland's second-degree assault. But I'm talking about the language in Nicholas. Excuse me. The highest court of Maryland has spoken. Why don't we have to follow that? Well, for several reasons, Your Honor. And this is the most important thing about the Nicholas decision is that the Nicholas court was looking at an entirely different question. What the Nicholas court was looking at was the possibility that an individual, in the course of an episode of resisting arrest by one or more officers, might not only be charged with resisting arrest and convicted of that offense, which, by the way, carries a maximum penalty of three years, but also be charged with potentially multiple offenses of second-degree assault arising from exactly the same conduct. And the Nicholas court cites, too, in other more recent decisions of the Maryland Courts of Appeals, cites a prior Maryland precedent in which defendants were actually charged with multiple counts arising from the same episode of conduct and received sentences far in excess of three years. For example, in Cooper, a defendant was sentenced to a 10-year consecutive sentence of imprisonment for second-degree assault that occurred at the same time as, and was, in fact, the same conduct as, the resisting arrest. So that was the primary concern of the court in Nicholas, was to foreclose any possibility that a defendant could receive, for example, a 10-year sentence for something that really was plainly resisting arrest. What would you consider the... Give me an example of what you think would be the least or the most sinister conduct that would be criminalized by the statute. Sure. And so I think the best way to answer that is to look at what the court in Rich, the language that the Rich court quotes from the Model Penal Code. And what the Model Penal Code says is that the effect of this language is to exempt from criminal liability, nonviolent refusal to submit to arrest, and such minor forms of resistance as running from a policeman or trying to shake free from his grasp. And so what we're talking about here is any conduct, any resistance conduct that exceeds fleeing, clearly fleeing doesn't mean resistance, but also must exceed minor physical contact, including trying to shake free from an officer's grasp. So if you're just trying to shake free or you're fleeing, that doesn't meet the standard. It has to be more than that. That's not violent force. I mean, there has to be some force exercised as a matter of resistance. And the Supreme Court is saying this is supposed to be a practical inquiry. When you look at the ordinary cases and what's really going on for a long span of years, for decades, you get situations like there's fighting and pushing and hitting. None of these are nominal exercises of force. None of these are taps or having your hands folded or just trying to wriggle free. We're talking about positive force unleashed, in most cases, not always, but at the arresting officer. And there's not only fighting, pushing, hitting, kicking, biting to the extent that the officer's skin is broken on the wrist. Combatants are falling to the ground. The arrestee is swinging handcuffs at the officer's face. Another arrestee is wielding a straightedge razor against the officer. Another is slashing the officer with a knife. Another, and this case is it. The predicate offense in this case was this, but we don't examine that under the categorical approach. But there are other published cases where defendants are driving vehicles and attempt to run over an arresting officer, punching repeatedly in the head, stabbing with a ballpoint pen, kicking in the groin, stomach, and chest, sticking with a pen at the back of the officer's badge. One case after another after another where we're not talking about mere flight and we're not talking about passive resistance. We're talking about the active use of very injurious and harmful force. And the Supreme Court says this is a practical inquiry. This is a realistic inquiry. And if courts across the land are going to treat this litany of violence against police officers with indifference, we risk undermining, I think, the respect that ought to go with an officer of the law. Policemen make mistakes. Yes, they do. And if they do, you sue them for application of excessive force under Graham v. Conner. But there's no indication in these cases that the officers were exercising a force over and beyond their lawful authority to effect an arrest. That's exactly right, Judge Wilkinson. But here's the thing. We're not talking about the difference between a shove and a really strong shove. This goes back to Johnson. And Justice Breyer in Johnson is contrasting violent force, which, by the way, is not a totemic word. He also uses the phrases strong physical force, force capable of causing pain or physical injury to another. We're contrasting that kind of force with the most minor, most incidental unwanted touching. And that's the key here, is that nobody would conceive of the fact that a Maryland conviction for resisting arrest could stand based on an individual walking up to a police officer and tapping them on the shoulder. How do we know that? When you look beyond the elements and you look at cases, isn't that universe skewed? Because aren't there thousands of people who get convicted and their cases never are in published opinions or go up on appeal? Well, Judge, I, of course... I'm just asking. I'm just saying for purposes of applying an analysis, isn't that universe skewed? Well, Judge Shedd, I can, of course, only engage with the precedent that's available to me. Well, that's my point. But that's my point. Do you think, though... Do you think by looking at precedent available... I'm just asking this question... that that necessarily includes every type of case that stands as conviction under those elements? Any defendant, Your Honor, who steps into any Maryland trial court and is charged with the offense of resisting arrest, has at his or her disposal a rich opinion? And so to the extent... Yeah, but I don't know. Maybe Maryland's different than every other jurisdiction in the universe that I know of. But don't people plea bargain? And don't people agree to plead guilty to something? Some jurisdictions don't even require a recital of the facts that the defendant has to agree to. I'm just not sure what the practice is in Maryland. But the person did something, but they don't want that felony on their record, so their lawyer and the prosecutor agree to what they'll be charged with and what the sentence will be. And so they may well stand. I'm just saying, isn't that a flaw in the system if we're going to look at how people stand convicted of crimes? Well, Judge Shedd, the unfortunate truth is that there are defendants, and especially in misdemeanor dispositions... Are you suggesting what I described in the plea bargain that that doesn't exist? No, it happens every day, and it happens hundreds of times a day in Maryland. But, you know, it's possible, it's unfortunately possible that a defendant could plead guilty to an offense despite the fact that his conduct doesn't meet those elements because he's unrepresented by counsel or because the counsel does a poor job for him. Maybe his counsel does a great job for him. Maybe his counsel does a great job for him because it was going to be assault with a deadly weapon on a police officer, and he stands convicted of resisting arrest. Maybe that wouldn't be such a bad deal that the lawyer... Maybe the lawyer knows all the law, and he does that. But my point is, doesn't that just point out... Do you think that points out any flaw in the system where we look at application of elements rather than the elements themselves in trying to decide what the cases are or what the mainstream is? Because I may be wrong about this, but it seems to me there is a skew in that universe when we look at those cases. You don't think that? Judge Shedd, I think we'd be standing on very different ground if we were in a circumstance in which there were 50 opinions from the Maryland Courts of Appeals over the last... Well, I'm just asking about the skew in the universe. Just if you just look at reported opinions, isn't that a skew? All of our cases, every crime in the Fourth Circuit that somebody's convicted of, that crime doesn't come to us. And if it comes to us, we don't have published opinions. That's precedent. I'm just wondering. It seems to me there's just a skew. That's not your fault, and it's not the fault of anybody else. Isn't that why we use the notion of a generic crime? And the Supreme Court has suggested that we're trying to find a uniform national crime. And looking at the Model Penal Code is just such an effort, as you recited, and would be a good place to find out what the elements of resisting arrest are. Now, true, we have to look at the state crime if they take it out of the heartland, but there's no evidence based on the cases, the reported cases that we have. Judge Wilkinson just recited a few of them. There's no suggestion that that takes it out of the heartland of the generic crime of resisting arrest as defined by the Model Penal Code. Well, not only is there no suggestion, but we also have over 60 years of jurisprudence from the Maryland courts, none of which supports opposing counsel's position that you may commit resisting arrest through something less than violent force. What about jury instruction? Well, the jury... Do you have any indication from anywhere that juries in Maryland are instructed or have ever been instructed to find a person guilty beyond a reasonable doubt of resisting arrest that the government must prove violent force? In fact, it's to the contrary, isn't it? Well... If you look at Rich itself, Judge Raker's opinion in Rich itself identifies the Maryland jury instructions applicable to resisting arrest, and nowhere in those instructions, which, as I'm sure you know, Judge Raker, as the chair of the Maryland Pattern Jury Instruction Committee, full well knows what's in those jury instructions. And more recently, Williams and the Court of Appeals affirming the Court of Special Appeals in Williams, each of those courts highlighted the jury instructions that are given to Maryland juries for resisting arrest, and nowhere in any of that jurisprudence is there any requirement that a jury in Maryland be instructed that it must find beyond a reasonable doubt that the defendant resisted arrest with violent or strong or serious or substantial force. Nor does the term violent force appear anywhere in the Rich opinion, although the word force appears about 23 times, right? Well, the Rich opinion... What if I said that's incorrect? Surely there must be something. You mean today? Let's get to the last joint section. Well, Judge Davis, I know I'm sliding uphill here, but the Rich court, you know, of course, it referred to the forceful and violent character of the conduct undergirding the resisting arrest charge, but let's get back to this jury instruction issue because it's an important one. What is it? Is he saying it's wrong? Is anything wrong with what I said? Oh, oh, oh, oh, oh, oh, oh, oh, oh. Does Rich use the word violent? That's what you just said. Rich uses the word violent when discussing the resisting arrest charge. The specific locution is forceful and violent character of the conduct undergirding the resisting arrest charge. That doesn't say violent force. The word violent does not appear directly next to the word force, but with respect to the jury instruction issue, Judge Davis, you're correct in characterizing the Maryland resisting arrest jury instructions, but we're in a context here where the federal courts, including this court, are always in the position of overlaying a federal definition over a state court construction of a crime or a state codification of a crime. But we don't get to change or ignore elements. No, but you get to interpret elements in the context of a federal definition. Well, the HIP says we have to look at the elements only. We look at the elements. And then the instructions, when I tried cases, that's what the instructions were with respect to the elements of the offense. And you say what Judge Davis says is correct on the elements of the Maryland offense. The HIP doesn't change the landscape with respect to prior Supreme Court opinions that flesh out how and when this court may look to state court jurisprudence to determine a state crime's elements. In fact, the HIP specifically says nothing about overruling Johnson or any other prior opinion on that point. What the HIP is talking about there is simply reserving the question. The HIP reserves that question. We still don't know. But it talks about applying the categorical approach. We look at the elements of the state offense. Right. And we apply, in this case, the categorical approach. That's your position, correct? That is my position, yes. All right. And so we look to the elements of the Maryland offense, which you say Judge Davis has recited correctly.  Well, if I may just give you a counterfactual, Your Honor. So, for example, in the case of Sykes, in that case, the Supreme Court was looking to determine whether a fleeing offense could meet the federal definition under the residual clause of conduct that was presenting a substantial risk of physical injury to another. But those words, substantial risk of physical injury to another, had absolutely no anchor. They weren't included in the state court definition of the elements of the fleeing offense. But nonetheless, the court in Sykes said, we can overlay that federal definition on the state court's description of the elements of the crime to determine whether it meets that federal standard. And that's exactly what I'm saying that this court should do. The fact that the word violent force or the words violent force doesn't appear in the Maryland resisting arrest jury instructions or in the elements of the crime doesn't mean that this court has somehow precluded. If you're precluded from looking at conduct and you've got to just take the spare element, the bare-boned element, you're moving federal sentencing up to an ever more abstract level. You're not, in other words, no one thinks that you're precluded from looking at what is actually going on. But if you say, all right, we've got to take the abstract elements, and that's it, we're moving federal sentencing so far from reality that, and the whole sentencing proceeding is something that's supposed to be grounded in a certain reality. Now, DeCamps and the categorical approach, for good and sufficient reasons, takes the sentencing approach one step away from reality in order to spare district courts the need to look into predicate crimes and in order to give defendants the benefit of early a plea bargain. But you go a double remove from reality when you say, okay, in addition to the categorical approach, we're going to also confine ourselves to bare elements, even when the conduct shows the ordinary case to be one of active resistance, positive violence. And we're also going to say that we can't look at that, we can't look at the fact that this is resistance, that the force is used in the context and in the purposes of resistance. And if we're precluded from doing that, we're taking the whole sentencing function and we're taking it at a double remove from reality. And I always thought that one of the things that was supposed to be very individualized and one of the things that was supposed to be grounded in actual, practical, real life facts was a sentencing hearing. And we're moving it very, very far away from that. Well, that's right. I mean, the bottom line, Your Honor, is that... Of course, every time that a federal sentence relies on a state predicate, it's pretty far removed from the sentencing hearing to the state predicate. Well, and that's exactly... Just by definition. Well, and that's exactly... The Supreme Court has suggested that we try to make that as neutral, as regular as possible, so that we don't try to get our new spin on what state law might be. Can I ask you one case that I thought of that I wasn't sure how you would... whether you would regard that as an appropriate predicate here? And that is, suppose that in going to arrest an individual, the individual spit in the eye of the police officer. Well, Your Honor, then we're talking about whether... Well, I'm not... I'm not sure that spitting necessarily is a threat of... Not necessarily, but... ...threat of violence. Is that or is that not? Does that... The conviction for that, does that come within the Maryland law or not? Well, Your Honor, we have no precedent in the Maryland courts for whether that... But I think the Judge Shedd's position... Oh, he could be holding out his hands to put on the handcuffs, and as he does it, he spits. There's no resistance. Or he could be coming out of the car, meeting the police officer, and spitting at him. Well... It's insulting, but it's not violent. Is that right? It's not violent? Well, you know, Your Honor, my recollection is that there is... It doesn't have to be. There's a variety of opinion out there, both in the federal courts and the state courts, about whether spitting constitutes force because it's an expectoration onto another individual. And a number of these cases appear in the prison context. But... Let's go back to the question I was trying to get the answer to, and that is, in your view, what is the most innocent conduct that would be criminalized by the statute? And I'm not trying to change the question. I'm trying to amend the question so that perhaps we can both be aided by the response. The most innocent conduct that would be criminalized by the Maryland statute is pushing or shoving someone away from you in order to evade apprehension. And you come to that because there is a Maryland case holding that? Well, no, Your Honor. There isn't a Maryland case holding that? There is not a Maryland case. Well, then you're making these things up. You're irritated that we're coming up with hypotheticals, but you just come up with one of your own. Well, Your Honor, I'm looking at the body of Maryland precedent on this, which... You're trying to federalize Maryland law. Well... Excuse me, could I just point out what my question was? My question was, what do you think would be the most innocent conduct? Give me your example of what would be the most innocent conduct criminalized in this case. Well, I would say that the case of Williams, this recent case, is right there on the edge of essentially the most innocent conduct, and that's a case where a bystander tackled the defendant, took him to the ground, and then the defendant tried to push off the bystander who took him to the ground before the officers arrived. They struggled on the ground for approximately a minute, a minute and a half. The defendant was tased and then taken into custody. Can I amend your question to ask not only what you think is, but why you think that? You're pointing to a reported case. Do you think that sets the lowest limit that Judge Duncan's talking about? Do you think that, and why do you think it? I think that based on the rich court's survey of not only the model penal code, but also the statutory constructions of resisting arrest and many other jurisdictions, plus their survey of all Maryland precedent. When you look at all of that collectively, the least conduct that has ever been criminalized by the Maryland courts in the form of resisting arrest is a physical struggle, a physical shoving. That's been completely unclear. What I'm asking is what would you, what in your opinion, was it not predicated on a case of withdrawal or resistance attitude, in your view, hypothesize what you think would be the most sensitive conduct in all the cases? Some future case. I'm doing my best, Judge Duncan. What I would say is this, that if pulling away is not resisting arrest, then the least form of resisting arrest must be the form of an officer having, an officer in a rare case of bystander, having the defendant in his or her grasp, and then the defendant shoving, pushing, struggling to escape that grasp. But there has to be some active application of force. Yes, it has to be active. In fact, the court in Rich went to Webster's, I believe, another dictionary to define resisting, and they said that resisting means to exert oneself to counteract or defeat. And here we're so far away. There has to be some active application. It has to be active, absolutely. At a very minimal. Absolutely. In fact, in Rich, the reason why the conviction was overturned was because Corporal Peterson, who was the arresting officer... What if the arrestee just goes limp? The officer says, stick out your hands, I'm going to arrest you for what you just did, and the person just drops. And he weighs about 400 pounds, so it's hurting the police officer. No. Why did you look at me when you said that? Judge Shedd, what Corporal Peterson said about Rich's conduct is he said that anytime you try to handcuff somebody behind their back, usually there's a bit of a defensive motion, but he wasn't offensive. And that's what we're talking about here. We're talking about offensive conduct. If an individual goes limp, that's not resisting arrest. It might be obstruction, but it's definitely not resisting arrest. And there's never been a Maryland appellate opinion which upholds that conduct as the basis for a resisting arrest conviction. If I may just turn briefly to Duane Ysavarez and James, which was the subject of Judge Wilkinson's earlier questioning, James provides for the application of the realistic probability test to more than simply listed crimes. The crime in James was a Florida attempted burglary statute. That is not a listed crime. And I understand that the clause that was being interpreted in James was the residual clause, but I would urge this Court to hold that the realistic probability test not only applies to listed crimes, it also applies to crimes that may fall under the umbrella of the residual clause and also the force clause. And that realistic probability test is important here. Was there anything in James that indicated that its application was limited to the residual clause and had no application to the force clause? Surely the James Court would not have cited Duane Ysavarez in the context of a residual clause crime and cited the exact realistic probability language if that language only applied to listed crimes. Your point is you can envision hypothetical cases, you can talk about cases on the margins, you can talk about cases on the periphery, but what you have to go at is what's the run-of-the-mill case? What's the ordinary case? What are we looking at as a general matter? And here you've got a crime with what I think are pretty clear common law origins and also a pretty clear present-day purpose, which is to confine, to protect the safety of arresting officers as a general matter, and not only to protect the safety of arresting officers, but at the same time to protect defendants by limiting it and confining it to situations where the active application of force is directed in the course of resistance against an officer. So the point is this offense, if it's properly interpreted, is the way I think Maryland courts have interpreted it, serves two purposes. It convicts where the safety of the arresting officer is put in danger, but it also helps defendants by not allowing them to be convicted for resisting arrest for just any old thing. And here, you know, we're going to broaden the basis of conviction and say, oh, it applies to this, and it can apply here, and it can apply that. And then you just, you're undermining it. You're having it sprawl and spread far beyond what it was intended, and it's going to redound. If this is the new understanding of resisting arrest, it's going to redound to the detriment of defendants themselves. Well, I'm out of time, Your Honor, but if I just may state briefly, it's not my position that this court needs to determine whether violent conduct is at the heartland or presents itself in the ordinary resisting arrest case. It's my position that this court needs to apply that realistic probability test and say, is there something more than just a hypothetical crime? Is there something more than an example that has been conjured from the ether? Is there a realistic probability? That's not the heartland. We're on the edge here, but there has to be a realistic probability. There's a realistic probability, but there's also the ordinary case, which means that there's also that ordinary case language out of Jacob. But that's residual clause language, and so I would certainly concede I don't get the benefit of the ordinary case term because that's in the residual clause. I have a question for you regarding the application of the categorical approach. It seems to me that in separating these different approaches, the attempt has been to simplify the way in which this court undertakes an analysis. We ought not have to engage in this kind of back-and-forth as to what conduct specifically applies to a particular crime here when you're dealing with it. So if the proposition is accepted that to advance the manner in which you've gone here, or even if you're looking at realistic or ordinary, if we're looking at an element approach, then under your analysis, violent force would necessarily be an element of this crime. Violent force necessarily must be an element of this crime. And it's not a matter of looking at common sense or looking at different scenarios. The reason we're doing a categorical approach is because we're looking at this crime and saying, well, is it a necessary element? And in that instance, I guess I'd like to know if a person, I keep hearing all these active ways in which you can resist the force. You can fight, you can spit, you can do all kinds of stuff. Can you do nothing except grab a pole and hold on to it in the instance of an officer trying to effectuate an arrest and you simply will not submit yourself to be arrested? Is that resisting arrest on the Maryland law? Your Honor, simplicity is certainly a virtue. That's not simplicity, that's reality. There are many people who get arrested and what they will do is hold on to something to keep from getting arrested. Is that resisting arrest? No, it's not resisting arrest. Then that answers my question. You say that's not resisting arrest and I assume a case come up of that nature, someone's being attempted to be arrested by an officer and he grabs hold of something and just won't be arrested, or he locks arms with other people and they just won't be arrested. That's not resisting arrest. It's not. It's obstruction. It's not resisting because the Rich Court citing Titus says it's got to be applied to the person of another. I see my time is up. Thank you very much. Just briefly, Your Honor. Judge Wilkinson, you definitely described a lot of very ugly conduct in a host of resisting arrest cases and we don't dispute that that is violent conduct. But in those cases, what we don't know is that the person wasn't also charged with assault in the first degree, assault with a deadly weapon, attempted murder. If somebody is stabbing somebody, those are subject to much greater convictions. Those convictions would tag a person as being a violent offender. That doesn't matter, counsel. We're not talking about that. Let me ask you this question. You agree violence and force does not have to be a listed element, correct? The element doesn't have to state violence. It doesn't have to state violent force, but the state court interpretation has to interpret the force as violent force. Yeah, but the point is that categorical process, you look at the elements of the offense and then we are determining at the federal level whether or not those elements present a risk of violence. Correct? Do you agree with that? Do you agree that that's the analogy that we have to do, right or wrong, how we come up? We have to look at those elements and see whether or not the conduct requires to meet that offense, whether or not it presents a risk of violence. Do you agree with that? No. What is wrong with that beginning analogy? You said that you're looking at whether the conduct leads to a risk of violence. No, that's it. The element of the offense, right? Look at the elements. Those elements being accomplished, conduct that falls on those elements, does it lead to a risk of violence? Is that correct? That is not the inquiry here. Why not? Because that's the inquiry under the residual clause. If it leads to a risk of violence, actually a physical injury to another, that's what you ask under the residual clause. The Sentencing Commission did not include a residual clause in 201.2. They could have, but they narrowed it to crimes that have as an element, just like Johnson and Battery, the use or threatened use of violent force. So not conduct that could lead to it, conduct that is. It does, right. First of all, in this situation, you're resisting an arrest. Unlike an assault, there could be many ways a police officer is standing on the corner and looking at the parade, you assault him or her, and they have restraints and they're professionals, they may or may not. But an arrest, there's only three ways you do it. Either you have an existing warrant for their arrest, a crime is committed in your presence, or you have probable cause that they have committed a crime. Do you agree with that? Yes. So then you're dealing with that context a person already. The police officer has to do something. It's not an option. And what we're talking about is the elements require you to resist that objective of a police officer, a person who's committed a crime in their presence, they have probable cause and committed the crime, or there's an outstanding warrant. And when you use resistance to that, the question is whether or not that presents a threat of danger, of violence. I feel like in that question there's an inherent presumption that we're talking about the most violent criminal possible. But a person drinking  open liquor on the street could be arrested. They're going to jail. Going to jail is not a pleasant thing, whether they're going for liquor or going for stabbing. But the question for the enhancement, is this the kind of person who would later act violently? And to go back to Judge Wynn's question, holding on to a pole the way I read the Maryland law is enough to constitute resisting arrest. And McNeil is an example of this case, where McNeil was a man who was blasting his music, annoying everybody, and when police officers came to arrest him, he was abusive verbally and foul, and eventually he resisted, he got free, and he fled. Getting free was the use of force there. Let me get back to follow up on a point my friend Judge Shedd made about is this a skewed universe? One question I had is, if we don't go by the published opinions, I don't know really what we have to go by, because all of the circuit cases and Supreme Court cases have relied upon reported opinions. But furthermore, if we were to go down the road of speculating well, what's out there that hasn't been reported, I'm not sure we would ever find anything a crime of violence under the categorical approach, because there's always the possibility out there somewhere that non-violent crimes or non-violent incidents have been the subject of a conviction either through the plea bargaining process or a trial that never reached appeal. I mean, I just don't understand if we take the skewed universe approach, I wonder whether we can ever find a category or find something to be a crime of violence. What I'm concerned about is that the categorical approach is almost becoming a shorthand for the not or either under only rare circumstances being a crime of violence. I agree with you completely that looking into, you know, the government reference, 50, 60 years of Maryland case law, I agree with you that that actually is the more abstract proposition. To go back and see what the conduct in all these cases was in the skewed universe that we have, the simplest way to avoid all of that is the categorical approach. And you said, what do we look at if we can't look at published cases? We look at the pronouncement of the state's highest court. The state's highest court says what the elements are. And I think the strongest argument we have is that... The state's highest court is also using the word force over and over again. Actually, the state's highest court said offense of physical contact. And my big question for the government is, is violent force necessary? And Nicholas, why didn't the court say violent force was necessary? They used the words offensive physical contact. And I think that ends the inquiry. How does holding onto a pole qualify under which? Which seems to say that force is required. The force of holding onto a pole. I'd like to refer the court to Durham v. Jones was the case that was before this court recently. And the Maryland Attorney General described the offense as sufficiently... It's committed when somebody scuffles with a police officer, pulls away, struggles to get away, or goes limp. So that does go to all the examples we talked about of just trying to get away. That that would be enough. And in several cases, Wilson, Trustee Clark, Downs are cited... ...in this process, or are we going to go state by state analysis? In other words, if we are able to find that Maryland stays within the general confines of what is understood to be resisting arrest, say under the Model Penal Code or by other states, should we have as part of our analysis an effort to find a generic crime of resisting arrest to be applied nationally? I think that as long as we're looking at it under the force clause, we only look at Maryland. If the sentencing commission were ever to list resisting arrest... No, you're saying just in the identified crimes, we should be looking for generic. Were the sentencing... And else why you say we shouldn't be? Yes, I believe that we have to follow the language as written, which is whether it has an element. But then the danger is if we identify crimes under the force clause or the residual clause, we're going to have a patchwork, I gather. That's what you're saying, which would sort of fall away from what Taylor seemed to suggest, that we're looking for some uniformity, national uniformity in applying these enhancements. Congress decided to enhance criminal penalty with these crimes. And I would think that somewhere in the process, we should be looking for some level of uniformity, shouldn't we? Yes, I think uniformity is fantastic, which is why the elements based approach works. And the sentencing commission... It does work, but if we find that the elements identified are identical in language, the word resist and the word arrest, to the language in 47 states, and we catalog those states, or we look at the model penal code, which is what the Supreme Court has done frequently, wouldn't that be an adequate form of analysis? If resisting arrest was listed by the sentencing commission in 201.2, that is exactly what... No, I'm not talking about identifying. I'm talking about any enhancement. We're not looking for a patchwork of 50 state enhancements and cataloging these things, are we? Well, the problem with that approach, though, is that because each state defines it differently and you're looking for what the conviction was based on, not what the conduct was, you're overbroad then, because there's some states that... By the way, people don't plead guilty to the model penal code, do they? No, they don't. And in Maryland, Maryland is entitled to define it differently than Pennsylvania. Exactly. And West Virginia. Exactly. And if going limp in one state is enough and it's not in another... That's the reason we used the elements approach, as the Supreme Court said. Exactly. We don't want to, because we don't need to look at the conduct. It's a uniform analysis, not a uniform result. A uniform analysis in the way we look at this. The result may come out different. As long as our analysis is uniform, we're okay. I agree completely. And we're going to continue to go state-by-state, offense-by- offense. Well, when you're looking at the Fourth Clause, yes. Unless there's any further questions? Okay. Thank you. I'll ask the clerk to adjourn and then we'll come down and reconstitute in-panel.
judges: Traxler, Wilkinson,Niemeyer,Motz ,King,Gregory,Shedd,Duncan,Agee,Keenan,Wynn,Diaz,Floyd,Thacker